Our third argument of the day is in Appeal No. 242731, CCP Golden and Others v. Kevin Breslin. Okay, Michael Breslin, not Kevin Breslin, Counsel Michael Breslin is here in the courtroom. Good morning. I am Michael Breslin of the Law Office of Michael E. Breslin in New York City, Manhattan and Wycroft, New Jersey. I represent the defendant appellant, Kevin Breslin, who is my brother, in this matter. And we're here to discuss the underlying case where two main questions are, did that court have subject matter jurisdiction over that action? And the second issue is, did the district court err in its award of a $22 million damage award against Mr. Breslin? We think the answer to both of those is yes, they lacked subject matter jurisdiction and the error in the award was incorrect. It is undisputed that at the onset of the litigation, there was no complete diversity between the parties. There were two parties, one of the plaintiffs, the Sabra Reet, as well as one of the named defendants, William Burris III, were both citizens of California. Now there was a mistake at the filing of the complaint because I think originally the plaintiffs thought that he was a resident and a citizen of New Jersey along with his father, and he used to be, but over time he had moved over to California. So at the time of filing, there was no complete diversity and that's undisputed. Now what plaintiffs did right away is once they realized that situation, they moved to dismiss Burris III through a Rule 19 motion, which was brought to the court, and in order to dismiss a dispensable or indispensable party, no, dispensable party, my bad, there has to be an analysis by the court of whether there has been equity and good conscience in making that determination. Now when we review the transcript of that proceeding, there's no evidence that there was any analysis whatsoever. And at that point, Mr. Breslin, my brother, was appearing pro se, or hadn't really actually gotten involved in the case yet, so he was pro se, so he wasn't there to question that. So there was no real factual determination other than the affidavit provided by the plaintiffs. So I think that the main issue here is, was that dismissal of Burris III appropriate? We see all the time, Mr. Breslin, in your experience litigating, you probably have too, where you'll plead in good faith diversity, complete diversity, and then low and behold it'll show up, you have a non-diverse party, and non-diverse party is dismissed to maintain diversity jurisdiction. So at that level, that looks like what happened here with William Burris III being dismissed. And then I think from there, the argument goes, was he a necessary and indispensable party under Rule 19a and b, correct? Correct. Okay. But we have joint and several liability under these contract provisions, correct?  So isn't the whole concept of joint and several liability that you can recover in full from one obligor under a contractual obligation? That is true. So if that's the case, why does, the part of your brief that I paused on is why therefore is Burris III a necessary and indispensable party? Because if a judgment is entered against Kevin Breslin, he in turn, through indemnity or contribution, can seek to recover from the other obligors under the contractual arrangement, correct? That is correct. Yeah, I think that the reason that Mr. Burris is indispensable in this case is that based on the terms of the guarantees, there's two guarantees, the Chilton and the Chilton lease, master lease, Mr. Burris is deemed to be conclusively bound by any judgment against any party under joint and several liability. Now, the problem is he's not there to defend himself. And sooner or later, the plaintiffs will have to go after Mr. Burris, and they're going to find him in California. Yeah, I think the challenge, you're clear on that in your brief, that here's the challenge, I think, for Kevin Breslin. Preclusion law, at least as I am familiar with it, is not turning upon the terms and conditions of contracts. So, I think your observation is accurate that Burris III would be on the hook contractually, but whether a judgment entered in the Northern District of Illinois has preclusive effect against him, where he's not a party, where he's been dismissed, is not turning upon any condition of the contract. It's turning upon other principles, the principles that apply in preclusion law. Well, I think if he is sued again in California, the risk is that he is going to be bound by that contractual provision and prevented from defending himself. So, again, he's in a situation where this could go on for another couple years, and he's still bound by a judgment that was incorrect. Yeah, we'll see what Mr. Williams says. I'm not sure your adversary agrees with that. I'm sure. No, I mean, I think they might say it's not going to have preclusive, that judgment's not going to have preclusive effect because Burris III is not a party in the Northern District of Illinois. And I think the other issue I think we're going to have here is when they do go after him in another location, presumably California, Burris III could very likely, and most likely, will have a different type of a judgment, different amount, and then he'll be sitting there with two judgments. He'll have a judgment based on the contract in this proceeding, as well as another judgment in California, which most likely will not be the same judgments. Let me back up, and the question with Rule 19 is also, can it be waived? Typically, you can't waive jurisdiction, but this is a little bit different because a party is dismissed, jurisdiction is restored. There's no objection. It's essentially an agreed motion, or at least a motion that is unopposed. And in Mucha v. King, we suggested that there is waiver when you don't object to such a motion. So what's your position on waiver? Our position is that you have the ability to oppose jurisdiction until appeal. Even though it wasn't raised at the lower level, it can absolutely be raised until the end, and we cite Levin v. the Attorney Review Board for that proposition. I understand the arguments in the brief, and your opponents make an argument based on the text of the rule. But since we've said in Mucha v. King that there's waiver, is there a way that you're distinguishing this or telling us to overrule that, or is there some subsequent case that you'd like us to look at? I think we should overrule that, because if there never was jurisdiction, we can't manufacture it here, and that's what the plaintiffs have done. By dropping Burris III, they manufactured jurisdiction that did not exist at the time of the filing, and we should be looking at the factors of, would his absence prejudice him? And I think the answer is obviously yes. And could this court shape a relief that might balance that and protect him from that? And most importantly, there's an alternative remedy by bringing this case to state court that will adequately serve all parties. Right now, he's out of it. He's got a judgment he didn't defend himself in, and this goes on and on and on. Whereas if you bring this in state court, he could defend himself, and frankly, that's where the guarantees mention specifically, this should be litigated in state court. And I think that that avoids this problem, where all parties can be in one place, and we can, then this issue gets resolved, as opposed to having a judgment out there against a guy who wasn't there to defend himself. How are you not, maybe you're not, but help me on this. How are you not arguing for a rule that in a situation where you have joint and several contractual obligations, that a plaintiff wanting to sue for breach has to name everybody? For there to be, for the case to properly proceed in diversity jurisdiction in federal court. As a general matter, that is correct, that under joint and several liability, you don't have to name all the plaintiffs. But in this case, it's really the opposite, because from the start of the case, first the third was part of the case. And only when they realized that there was an error on the citizenship, that they're trying to have him removed. I see. So suppose it was different. Suppose that the lawsuit commenced and the only defendant was Kevin Breslin. And there's no question about diversity then. Would you argue it's problematic because the other obligors are not defendants? I would argue that. I would argue that. But I think that in, in this case, I mean, I think when you go to the, you know, the key cases, which are, you know, Newman Green, which does open the door to a possibility of having Burris III removed or dismissed. But on the other hand, stay right, the case would preclude that, that from happening. And it should only be done in very, very specific situations after weighing the equities. Now it's, and it's very, very clear here, based on the record, because I wasn't there, that no analysis was done at all. It was, so there's no analysis of equities, no analysis of good conscience that would lead us to understand that the lower court went through that analysis. And I, and I think if they did, they would see that, you know, right now Burris III is in a bad place. He's, his absence is prejudicing him. And there is a very viable alternative of moving this case to Illinois State Court as the contracts provide. Can I, can I shift gears and ask you a question about the damages?  Okay. The, one of the, one of the things that your client did that makes the hand that you've been dealt difficult, in my view, is violate the Rule 56.1 requirements in the district court. All the facts that his adversary alleged were accepted, were accepted at summary judgment. You've seen that in the district court opinion. Okay. When it came to the merits, though, I mean, he may have, he may have said enough, Kevin Breslin may have said enough to preserve his objection to the $5.8 million of accelerated rent and the million on liquidated damages. But it's far from clear to me that he lodged a meaningful challenge to some of the other components of the damages award. For example, the $10.3 million of lost value. You say a little bit about it in your briefs, but just a little bit. Sure, no, understood. The plaintiffs brought it, brought in only at the last minute, and it was really on the reply brief for summary judgment. They brought in an affidavit from Peter Nyland, who's a, an officer for the plaintiff. And he, you know, he ran through his numbers, and it was, you know, he said he talked to these people who talked to those people, and they look good, you know, but frankly, there's plenty of, plenty of things that look good on AI that maybe is not right. And that's where Mr. Breslin needed an opportunity or deserves an opportunity to review those numbers, to review those assumptions, especially in the, in regards to mitigation of damages. Which, you know, when you look at it, it doesn't look like it actually happened. The property was sold for a million dollars, and they're saying he had $22 million of damages, and there's a lot of factual issues there. So hold on, I want to make sure, is your point that Mr. Breslin, he's certainly aware of Peter Nyland's declaration? Absolutely. Okay, but he had no ability to offer evidence in response to it? Not in summary judgment, because it only came up, I think the issue was raised in opposition, and... Right, but he has a chance in reply, right, to respond to it, or alternatively to move to open the record. Well, in that case, that was not done. Okay. That was not done. Do you want to save any, do you want to save your time for rebuttal? It's up to you. If you... Yes, please. Okay. I mean, we're going to, we're going to give you rebuttal. I don't want to interrupt your thought. If you had another point to make, go ahead. Yeah, it's just that Mr. Nyland's document was self-serving, was never reviewed by the court, and it's really just looked at like, hey, it looks good, good, sounds good, let's assess him with $20 million, and there's just, there's too many issues there that really need to be fleshed out through an analysis by the court, and that was just never done. And I think that that's just not appropriate, and, you know, I think because of the nature of when it was brought in, the, it should not have been admitted in summary, at summary judgment, in that it was brought in at the reply, it was hearsay, and, you know, not subject to an exception, and as a result should not have been considered a summary judgment, which leads us to this, we, the plaintiff did not have jurisdiction, and these damages were inappropriate and were awarded in error. Thank you. Okay. We'll give you a minute on rebuttal. Thank you. You're welcome. Mr. Williams, good morning. Good morning. Matthew Williams for the Appellees. May it please the court. Your Honors, beginning with the Rule 19 issue, I think Newman Green basically disposes of this issue entirely. Not only does it say that a non-diverse party can be dismissed to save diversity, this is a direct quote from Newman Green, given that all of the guarantors, including Bettison, are jointly and severally liable, it cannot be argued that Bettison was indispensable to the suit. I think that basically handles that argument. Very clear that Mr. Burris was jointly and severally liable. The guarantees expressly stated that. To the extent that Mr. Breslin is now arguing, hey, there's a provision in this guarantee that says that Mr. Burris agreed to be bound by findings in another action. First of all, that's not a judgment in this action. Obviously, I don't have a judgment against Mr. Burris III. I don't have anything to execute on. I would have to file a new lawsuit. That provision is a contractual provision, and on top of that is a contractual provision that has Mr. Burris III saying, you don't even have to sue me in the other lawsuit. It's anomalous to say he is now indispensable in this lawsuit because of a provision he signed saying, you don't have to sue me in that lawsuit, and I'm going to agree to be bound by what happens there. Well, do you agree the preclusion analysis doesn't turn upon the terms and conditions of the contract, does it? It does not at all. The preclusion analysis, I don't think I have any argument that he is precluded under what are called standard principles of law. To the extent I have any argument, it's because of the terms of the guarantee when I seek to enforce it, and that would be litigated, and he'll have a full and fair opportunity to litigate that. He has not had the full and fair opportunity here. That's agreed upon. Therefore, standard principles of collateral estoppel and issued preclusion don't apply. Unless there are any further questions on the Rule 19 analysis, I'll briefly address the mitigation and damages arguments. First of all, just to be clear, the numbers were included in terms of the damages. All of those were included in the initial motion filing. Mr. Breslin very clearly had an opportunity to respond to that. He chose not to by asserting the Fifth Amendment. That is on him, but it's not that there wasn't evidence of that presented, and it's not that he didn't have the opportunity to respond to that. Even on the mitigation, first off, I think the better of the law would be that because a guarantee is a separate contract, which Illinois law does support, the Armbrister case is a good example that it is an affirmative defense mitigation. Nonetheless, that evidence was put in. There's no reason to think that Mr. Breslin would have done anything other than assert the Fifth Amendment, as he did throughout the case. He didn't move to strike. He didn't move to file a certain reply. He has done nothing to say, here's what I could actually offer that would rebut this. He undertook no discovery in the underlying case, and so notwithstanding the fact that it was submitted in the reply because it was raised in the response, there's almost no reason I can see of to ignore that evidence, and the court properly took it into account. Can you walk me through the calculation, though, for the diminution and where in Illinois law that's coming from? So, Judge Schader issued an opinion in the National Health Care Finance case. It is a district court case, obviously not Seventh Circuit, but that talks about, okay, here's what contract damages are for leases, and here's what naturally flows from them. And I think it's going back to those basic contract damages that get to the diminution in value. Here, the underlying leases said the tenants were going to take care of the properties, keep them in good repair and condition, to continue to pay rent, to continue to operate them as nursing homes. Once the facilities were put into receivership and lost their licenses, they certainly lost a lot of value. They had the value as operating businesses. They weren't in good condition. My client, as you can see from the mitigation evidence, tried to go out and find new tenants to lease or to purchase, was unsuccessful in doing so. And so, the idea is, all of this has been lost, what would we have had had the tenants actually complied with the leases? Had they operated these facilities until the end of the lease and then handed us back good condition, working nursing homes? In terms of the actual calculation of it, it goes into how nursing homes are valued, which Mr. Nyland works for a real estate investment trust that invests in healthcare properties. He explains that we value leases in large part based on the rent that would be paid. So, that's how the real property tends to trade. And he basically sets out the calculation, which is apply a capitalization rate to the amount of rent that would be paid and uses the rent that the tenants agreed to pay here. So, that's how the actual numbers flow. But the underlying basis on why that value is owed is because that's what my client's expected to get back at the end under the terms of the lease. Yeah, I think what you're basically saying is just suppose a different fact pattern. And suppose a fact pattern where the, what was it, four facilities or something? Where the four facilities were completely ignored, not maintained, and fell into a state of dilapidation in breach of the contract. You could have an appraiser come through, right, and assess what it would take to bring him back up to speed and repair damage, et cetera, et cetera, that way. And if that number added up to $10.3 million, it is substantially or in substance it's the this is just done through a capitalization calculation. I think that's correct, Your Honor. There are different ways you could think about it. Another way to think about it that actually would have been more advantageous to my client in terms of the ultimate number is to look at what the tenants themselves signed a purchase option agreeing to buy these properties for. And it was $15 million. So, the future value discounted back to present value is about $5 million, less than that. It comes out to $10 million. There's different ways you could do it. But at the end of the day, all it is doing is looking at, here's what we expected. What are the damages to get us back there? And they got a million out of it at the end, right? They got a million out of it at the end, minus some costs of the transaction, all of which were taken into account in the damages calculation. Can I ask you about the one part of the calculation that I do pause on a touch is two of them. The liquidated damages. Liquidated damages are tricky and they may be appropriate in an instance where you really can't compute compensatory damages or it's just exceedingly difficult to do that. But all of these other components are essentially compensatory. So, why is the liquidated component, the million, why is that not essentially a penalty or tantamount to a penalty? The million dollars, so I think the law says, look, as long as that is a reasonably calculated amount, we're not going to consider it a penalty, even if you're able to ultimately calculate because you've agreed to- But it's intended to approximate damages, though. That's the difficulty for you, right? And you have all these other elements of it, of the damage calculation. There's a whole bunch of elements other than liquidated damages, as you know. That's correct, yes. I think the idea, though, is that that was agreed upon ahead of time as a way to approximate and Illinois law does enforce that even where, as far as I can tell, even where the other damages end up being calculable. That said, if this court were to reduce the award by the amount of those liquidated damages, I could understand where that comes from in terms of finding them somewhat duplicative. Okay, help me out then. The only final question I have on this is on the acceleration of the unpaid rent that way, and the reason I'm asking you about that is because it seems a little bit counterfactual to me, and that is that had the leases run their course, they would have run through January of 2026, if I'm right about that. Correct. Okay, but we know that that's actually not what happened, nor was it what the parties had agreed would happen, and what was slated to happen is that there would be a sale, right, in March of 2019? That's correct. Okay, and so had the sale occurred, ownership would have transferred, right, of the facilities. There wouldn't have been any more rent being paid. That's correct, and I think this goes back to my comment earlier about when you look at the way the diminution in value was calculated, it was advantageous to the tenants as opposed to my clients under this damages calculation. If you wanted to look at it another way, I think you could use that $15 million plus, I think it was $16 million, number that was agreed upon, and if you were to do that, I agree that using the accelerated rent at that point wouldn't make sense because then you're saying, okay, under this contract as kind of looked at in that sense, but now you've got a $16 million number instead of a $10 million number. So it probably comes out about the same between the accelerated rent discounted back to present value and the diminution in value discounted back. But why would you be, not you, but why would your clients be entitled to both? I think it's one or the other, and it was framed as one or the other because there was no, as I said, I could see where you can get to the idea that the liquidated damages are duplicative, but the $16 million was never included. So the way it was calculated by my clients is, okay, if the lease had played out, the sale had not occurred, they had breached the purchase option, but the lease had played out, they would have paid rent through the end of the lease, and then we would have had this working, good condition set of four facilities that are handed back to us, and so we would have had the value of it at that point in time. Let's subtract out what we actually received. Another way to look at it may have been, okay, there's a sale that would happen in March of 2019, it would be for $16 million, rent after that wouldn't occur, and so you wouldn't have that acceleration of rent, but you would have $16 million in March of 2019. I think fundamentally those numbers probably come out pretty close. It's two, to me it's two sides of the same coin. My client chose the accelerated rent and the net present value kind of extended out at the 2026 value of the building, so discounted back to present value as opposed to saying, hey, if the sale had gone through, we'd have got the $16 million. If there are no further questions, thank you. Yep, thanks to you, Mr. Williams. Mr. Breslin, we'll give you the minute of rebuttal. Thank you, Your Honor. Okay. Plaintiff Appellee is relying heavily on Newman Green as supporting their position that Rule 19 allows an easy dismissal of Burris III. I think that's extremely broad and paints a very wide brush where I think that under Newman Green, the opportunity to do that should be sparing, and it really requires a review of the facts, and I think what's unusual about this case is the contract. The contract provides for conclusive liability that isn't always going to be the case, so I think you really have to look at the equities and review, do a Rule 19 analysis, and say, was it appropriate in this case, and I think especially when there's alternatives, a good alternative, which is the state court, I think that some of these cases where they're stuck there because there's nowhere else to go. Here, we could easily go to state court, and I think that's very viable. On the damages, they did not really prove their mitigation efforts. It was never cross-examined. It was a self-serving document, and it should be ignored. It's hearsay, not allowed under summary judgment, and at the end of it, while the plaintiff police defended their figures, I think it's clear that the numbers that they're coming up with are very uncertain and could be anywhere. I think you throw out a 9.5% cap rate, no one knows what that is. Should that be two? Should that be 30? No one knows because we never had that conversation, and that is where this should be remanded to the state court for a fuller analysis on that issue if we even need to get to that because they didn't have jurisdiction to start with. Thank you. Okay. You're quite welcome, Mr. Breslin. Thanks to you, Mr. Williams. Thanks to you. We'll take the appeal under advisement.